## DECISIONS OF CASES

ARGUED AT THE

# SPECIAL TERMS,

### FEBRUARY AND APRIL, 1847.

---

#### P. I. & C. C. Clute *vs.* I. B. Clute.

#### Corning, Horner & Davison *vs.* The Same.

Though the issuing of a *fi. fa.* before the filing of the judgment record is irregular, yet when the record is subsequently filed, the *fi. fa.* thereupon becomes effective, and is from thenceforth regular.

The court will not, on the motion of a creditor whose execution was issued on a subsequent day, inquire into the fractions of a day in order to pronounce a *fi. fa.* on a prior judgment irregular for having been issued at an earlier hour of the same day than that on which the record was filed.

If both executions had been sued out on the same day, the particular hour when each was issued would be material to determine their priority.

*M. T. Reynolds,* for the plaintiffs in the suit last mentioned, moved to set aside the execution in the first of the above entitled suits as irregular, on account of its having been issued before the record of judgment in that case was filed. On the 15th day of May, 1846, the defendant gave a bond and warrant of attorney in the first suit, in the penalty of $10,000, conditioned to pay $5,000, upon which a cognovit was given and a judgment record was prepared and signed on the same day, and the defendant signed a stipulation that execution might issue forthwith. On the morning of the 16th of May, the record was sent from Schenectady to be filed with the clerk at Albany, and

should have reached the office at 12 M., but did not arrive until about 3 P. M., at which hour it was filed and the judgment docketed. About 2 o'clock on the 16th, the plaintiffs' attorney, supposing the record had been filed, issued and delivered to the under sheriff, at Schenectady, a *fi. fa.* on the judgment, which was endorsed as received by the under sheriff at that hour, and he, on the same day, levied upon a store of goods owned by the defendant. There was a conflict in the affidavits upon the question whether the plaintiffs' attorney, when he delivered the execution, directed the officer to make a levy immediately, or to wait until evening before he made one; and also upon the point whether the levy was actually made soon after the officer received the execution, or at about 8 o'clock in the evening, the endorsement of the levy being dated at the last mentioned hour.

In the last above mentioned cause, judgment was perfected, by bond and warrant of attorney, on the 4th day of June, 1846, and a *fi. fa.* thereon was issued and delivered to the sheriff on the 20th day of October following, which, by the directions of the plaintiffs therein, was levied on the same store of goods, then in the hands of the deputy sheriff by virtue of the levy on the former *fi. fa.* The plaintiffs in the last mentioned judgment had notice of the prior judgment, execution and levy, when they obtained the judgment in their favor.

*S. Stevens*, for the plaintiffs in the first judgment.

*By the Court,* BEARDSLEY, J. The honesty of the first judgment was not questioned on the argument of this motion; and upon the papers before me it is quite clear that the defendant intended to give the plaintiffs in that judgment a preference over his other creditors. For this purpose the bond and warrant of attorney, with a stipulation that execution might issue forthwith, were executed by the defendant on the 15th of May. The record of a judgment on this bond was filed the next day, and an execution was issued and a levy made. If the precise time of the events of that day could be deemed ma

terial in determining this motion, it would probably be found that the execution was issued and delivered to the sheriff at 2 P. M., the record filed at 3, and the levy made at 8 in the same afternoon.

It is undoubtedly irregular to issue an execution on a judgment until the record has been filed.    By the statute " no judgment shall be deemed valid so as to authorize any proceedings thereon, until the record thereof shall have been signed and filed."    (2 *R. S.* 360, § 11.    *See also p.* 363, § 1.)    The rule was the same before the revised statutes were passed.    (*Barrie* v. *Dana,* 20 *John.* 307 ; *Chichester* v. *Cande,* 3 *Cowen,* 39.) Until the record of judgment is filed an execution issued thereon is not only irregular, but, as was observed by Chief Justice Savage, it is " a mere nullity."    (*Marvin* v. *Herrick,* 5 *Wend.* 109.) But on the filing of the record it ceases to be a nullity, and thenceforth, there being a regular judgment to uphold the execution, it becomes effective against the defendant therein, as well as all others who have an interest in the question. (*Small* v. *McChesney,* 3 *Cowen,* 19; *Clute* v. *Clute,* 3 *Denio,* 263.)

But, in my view of the case in hand, the moving parties are not in a condition to make any question as to the order of the events of the 16th of May.    They had, on that day, no pretence of right to the property in controversy, as their execution was not issued until several months thereafter, and for that reason cannot be allowed to show that the execution in the first suit was irregular, because issued one hour before the record had been filed.

In general, fractions of a day are unknown to the law, that period being regarded as *punctum temporis* and indivisible This, to be sure, is a legal fiction, introduced and adhered to for the sake of justice, but which will not be allowed to deprive any one of his rights ; for " where justice requires it, the exact time in the day in which an act was performed, may be shown by proof."    (4 *Kent,* 95, *n. b. 5th ed.*)    Thus, where two executions against the same party are delivered to the sheriff *on the same day,* it may become material to know which was first

received by him. (2 *R. S.* 365, 366, §§ 13, 14; *id.* 364, § 10; *Lemon* v. *Staats*, 1 *Cowen*, 592; *Marvin* v *Herrick*, *supra.*) So where different judgments are docketed, (2 *R. S.* 360, §§ 11, 12, 13,) or conveyances recorded, (1 *R. S.* 756, §§ 1, 2, 3; *id.* 760, §§ 24, 25; *Lemon* v. *Statts*, *supra*,) on the same day, the precise time of each event will be important. In these, as well as all other cases, where conflicting rights are claimed to exist, in consequence of different things having been done *on one and the same day*, it becomes indispensable, in order to do justice betweeen the parties, to ascertain the precise time when the events occurred; and for this purpose the fractional parts of a day may be inquired into. Upon this principle the authorities all agree, and it has been applied to a great variety of transactions. " The law will never account by minutes or hours, to make priorities in a single day, unless it be to prevent a great mischief or inconvenience." (*Bellasis* v. *Hester*, 1 *Ld. Raym.* 281.) " Generally speaking, there is no fraction of a day, unless where it is necessary to look to it in order to answer the purposes of justice." (*Field* v. *Jones*, 9 *East*, 154.) In *Small* v. *McChesney*, (*supra*,) which, in principle, was much like this case, the court said: " The whole proceeding is on the same day, which the law will not divide into fractions, unless this be necessary for the purpose of guarding against injustice." See, to the same effect, *Vin. Ab. Time*, (*A.*) 17, 18; (*A.* 2,) 3; (*A.* 3,) 7; *Roe* v. *Hersey*, (3 *Wils.* 274;) *Sadler* v. *Leigh*, (4 *Camp.* 195;) *Wydown's case*, (14 *Ves.* 81, 87;) *Lester* v. *Garland*, (15 *id.* 248, 257;) *Thomas* v. *Desanges*, (2 *B. & Al.* 586;) *Lyttleton* v. *Cross*, (3 *B. & C.* 317;) 2. *Stark. Ev.* 1079, *Phil. ed.* 1842; 3 *Chit. Gen. Pr.* 111; *Clute* v. *Clute*, (*supra*.)

The first of these judgment records was filed on the 16th of May, on which day the execution thereon was issued and levied. The second record was filed in June, but the execution was not issued until October. Had this execution been placed in the hands of the sheriff on the day when the first was received by him, a very different question would have been presented, and an inquiry into the order of the events of that day

might have been necessary. But such was not the fact, the second execution being issued several months after the first levy had been made. On the 16th of May, when the first execution was levied, there was, as to these goods, no conflict between the parties to this motion. The moving parties then had neither an execution or a judgment against the defendant, although the rights of the opposing parties were as perfect at that time as they have been at any time since. Allowing the first execution in point of time to stand, will give effect to what the parties to the judgment on which it issued, intended, and what, as far as these papers disclose, was just towards all persons. The moving parties, whose rights as execution creditors arose long since the first levy was made, cannot be allowed to divide the day of that levy into fractions, in order to show the execution, by virtue of which that levy was made, to have been irregular, as having issued before the record of judgment was filed. This would be allowable in furtherance of justice, but not to defeat the equities of the case. The authorities referred to are full to this point.

Motion denied.